IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| CHAD FELDMAN and ELIZABETH TROST, individually and as parents and next friends of JOHN DOE, a minor,<br>        Plaintiffs,<br><br>  v.<br><br>DISTRICT 6 BOARD OF EDUCATION d/b/a STAUNTON COMMUNITY SCHOOL DISTRICT 6, BRETT ALLEN, STEPHANIE SCHWAPPACH, and CARRIE GRIFFITH<br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 25-cv-3002 |

## OPINION

**COLLEEN R. LAWLESS, United States District Judge:**

Before the Court is Defendants Motion to Dismiss (Doc. 11). For the reasons that follow, the Motion is granted in part and denied in part.

## I.    PROCEDURAL HISTORY

In January 2025, Elizabeth Trost and Chad Feldman,[1] individually and on behalf of their minor child, John Doe, filed suit against District 6 Board of Education d/b/a Staunton Community School District 6 ("District 6") and three school administrators: Brett Allen, the Superintendent of District 6; Stephanie Schwappach, the 6th–12th grade Dean of Students; and Carrie Griffith, the principal of Staunton High School ("SHS"). (Doc. 1). Count I alleges District 6 violated Title IX of the Civil Rights Act; Count II alleges

---

[1] Trost is Doe's mother, and Feldman is Doe's father. Where relevant, they are referred to in that respect or, collectively, as Doe's parents.

all Defendants violated the Fourteenth Amendment under 42 U.S.C. § 1983; Count III[2] alleges all Defendants violated Section 504 of the Rehabilitation Act; Count IV alleges District 6 violated Title II of the Americans with Disabilities Act ("ADA"); Count V alleges First Amendment retaliation against all Defendants; Count VI alleges District 6 willfully and wantonly neglected various supervisory duties; Count VII alleges the individual defendants willfully and wantonly engaged in conduct in violation of their duties; Count VIII alleges invasion of privacy against all Defendants; and Count IX alleges intentional infliction of emotional distress against all Defendants. Defendants move to dismiss Plaintiffs' Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.    FACTUAL BACKGROUND

John Doe alleges he was bullied and sexually harassed by students and mistreated by school administrators while attending SHS. Doe had an Individualized Education Plan ("IEP") requiring a full-time personal aide based on his Down Syndrome and speech disorder. (Doc. 1 at ¶ 14, 28). District 6 provided Doe transportation to SHS from both his home and from Gillespie High School ("GHS"), which he attended part-time. (*Id.* at ¶¶ 13–14).

In September 2022, Doe began having issues while in the bathroom. He required bathroom assistance and had a "bathroom accident" where he had to be picked up from school. (*Id.* at ¶ 16). Doe's parents asked for adjustments to his IEP in response to these developments. (*Id.*). Later, Doe was accused by Griffith of defecating in a urinal, and an

---

[2] Plaintiffs clarify in their briefing that Counts III and IV are exclusively brought on behalf of Doe. (Doc. 18 at 20).

aide observed him leaving the restroom with "red wrists." (*Id.* at ¶¶ 17, 19). After Doe refused to attend school, District 6 started sending a personal van to take him to school. (*Id.* at ¶ 18).[3]

In January 2023, the school began supervising Doe in the restroom. (*Id.* at ¶ 21). Sometime in the fall of the 2022–23 school year, a student took a selfie in the bathroom while Doe (unaccompanied by his aide) was urinating (the "Photo" or the "Picture"). (*Id.* at ¶¶ 30, 48). Doe is in the background of the Photo with his penis visible. (*Id.* at ¶ 30). The student shared the Photo over Snapchat, and it was sent to a Snapchat group message for the football team. (*Id.* at ¶¶ 31, 47). The Photo was circulated again the following school year. (*Id.* at ¶ 38). Another student eventually reported the Picture to the school, prompting administrators to identify the students who had saved the image. The school forced those individuals to delete the photo from their phones. (*Id.* at ¶¶ 32, 34).

Schwappach contacted Doe's mother about the Photo. (*Id.* at ¶ 32). The next day, Doe and his parents met Schwappach and Griffith at SHS. (*Id.* at ¶ 33). Doe's parents wanted to see the Photo, but Griffith said she could not retain any copies due to its graphic nature and that the parents would need to report the incident to the police and obtain a warrant if they wanted to retrieve the deleted images. (*Id.* at ¶ 35). However, under District 6 policy, schools must report incidents of child pornography to the police and had done so in the past. (*Id.* at ¶¶ 36, 91, 106, 196–97). Nevertheless, Doe's parents

---

[3] This transportation arrangement was not permanent, but it is unclear how long it lasted.

reported the incident to law enforcement, and the police opened an investigation. (*Id.* at ¶ 36).

On February 16, 2024, Doe's parents informed the school board of the Photo incident and police investigation and requested that District 6 investigate the incident. (*Id.* at ¶ 46). The same day, his parents requested an emergency IEP meeting to transfer Doe to GHS full-time. (*Id.* at ¶ 45). SHS agreed to the meeting and prepared a revised IEP in preparation for the meeting. (*Id.* at ¶ 43). Doe temporarily transferred full-time to GHS. (*Id.* at ¶ 108). On March 11, 2024, Doe's parents filed a discrimination complaint with the Office of Civil Rights ("OCR"). (*Id.* at ¶ 52). OCR initiated a mediation process, but it failed on September 3, 2024. (*Id.* at ¶¶ 56–59).

On October 16, 2024, one of Doe's teachers informed his parents that Doe missed the bus and would be transported to school by van (the "2024 Van Incident"). (*Id.* at ¶ 63). She said Doe was not accompanied by his personal aide. (*Id.* at ¶ 64). His father went to SHS to investigate and was told by two office staff members that Doe's aide was in the van. (*Id.* at ¶ 65). Allen provided security footage of the van arriving at SHS, which indicated a transportation aide was in the van with Doe, but not his personal aide. (*Id.*). Allen told Doe's father that Doe had refused to get on the bus because it smelled. They had previously used the van to take Doe to school when he refused to ride the bus in the past. (*Id.* at ¶¶ 66–68). Allen apologized for the incident. (*Id.* at ¶¶ 65–66).

## III.    DISCUSSION

### A.  Legal Standard

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint. *Christensen v. Cnty. of Boone, Ill.*, 483 F.3d 454, 458 (7th Cir. 2007). When considering a motion to dismiss under Rule 12(b)(6), the court construes the complaint in the light most favorable to the plaintiff, accepting all well-pleaded allegations as true and construing all reasonable inferences in the plaintiff's favor. *Id.* at 458. To state a claim for relief, a plaintiff need only provide a short and plain statement of the claim showing he is entitled to relief and giving defendants fair notice of the claims. *Maddox v. Love*, 655 F.3d 709, 718 (7th Cir. 2011). However, the complaint must set forth facts that plausibly demonstrate a claim for relief. *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 547 (2007). A plausible claim is one that alleges factual content from which the Court can reasonably infer that defendants are liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Merely reciting the elements of a cause of action or supporting claims with conclusory statements is insufficient to state a claim. *Id.* The complaint must do more than assert a right to relief that is "speculative." *Virnich v. Vonvald*, 664 F.3d 206, 212 (7th Cir. 2011).

### B.  Analysis[4]

---

[4] Throughout their response Plaintiffs cite nonexistent cases or contend that cases, although real, stand for wholly unsupported or undiscussed legal conclusions. For example, Plaintiffs cite "*Doe v. Madison Metro. Sch. Dist.*, 43 F.4th 963, 969 (7th Cir. 2022)," for the proposition that "sexual harassment need not involve animus based on gender stereotypes." (Doc. 18 at 5). That case does not appear to exist, along with many others. Similarly, Plaintiffs cite *Rost v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114, 1122 (10th Cir. 2008), and provide an ostensible quote from the case, that sexual harassment includes "conduct of a sexual nature." Although the case exists, the quote does not, and the proposition the case is cited for was not a point of discussion.

### (1) Title IX (Count I)

Under Title IX, "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Plaintiffs argue they have adequately stated a Title IX claim under three theories: student-on-student sexual harassment, sexual discrimination, and retaliation.

### (a) Sexual Harassment by a Fellow Student

"Sexual harassment by a fellow student is actionable under Title IX if a plaintiff demonstrates: (1) the harassment was based on sex, (2) it was at an educational institution that was receiving federal funds, (3) the harassment was so severe, pervasive, and objectively offensive that it deprived the victim of access to educational opportunities, and (4) the school officials had actual knowledge of the harassment and were deliberately indifferent to it." *Doe v. Columbia Coll. Chicago*, 933 F.3d 849, 856 (7th Cir. 2019).

Defendants argue the picture of Doe was not taken because of his sex. They rely on a New York district court case for the proposition that merely because the underlying conduct was "sexual in nature" does not mean it was "sex-based" within the meaning of Title IX. (Doc. 16 at 4) (quoting *Nungesser v. Columbia University*, 169 F. Supp. 3d 353, 364 (S.D.N.Y. 2016)). In *Nungesser*, a female student filed a complaint with her university alleging a male student raped her. 169 F. Supp. 3d at 358. The university found for the male student and the female student began an anti-rape campaign, at times directed at the male student. *Id.* at 359. The male student brought a Title IX sexual harassment claim.

*Id.* The district court dismissed the claim, finding the female student's campaign was not motivated by the male student's sex, but by "a particular event involving a particular male." *Id.* at 367.

Here, the female student's anti-rape activism in *Nungesser* is not analogous to a student taking a picture of Doe's while urinating and sharing it with others. Although it is possible that the Photo and its circulation was not motivated by Doe's sex, the vulgar and sexually explicit nature of the alleged conduct does enough for this aspect of the claim to survive Defendants' Motion to Dismiss. *Sims v. Marquette Univ.*, No. 23-CV-1154, 2024 WL 4522363, at *10 (E.D. Wis. Sept. 10, 2024) ("An unidentified student taking a semi-nude photo of [a student plaintiff] without her consent is a plausible example of gender-based harassment.").

Plaintiffs contend Defendants were deliberately indifferent to the sexual harassment. They allege Defendants knew about the Photo long before they did anything about it and deliberately concealed its existence. But their contention is belied by the allegations that Defendants notified Plaintiffs of the Photo's existence and deleted students' copies of it. (Doc. 1 at ¶¶ 32–35).

However, according to the allegations, after Defendants were put on notice of the Photo and its dissemination, they failed to contact the police consistent with their internal policy and practice concerning child pornography. (*Id.* at ¶¶ 36, 91, 106, 196–97). The police department expressed surprise as "the school had always made them aware of situations like this." (*Id.* at ¶¶ 36, 197). Therefore, the Court may plausibly infer that

Defendants were deliberately indifferent to the alleged sexual harassment by failing to report the incident in accordance with their express practice. Defendants offered no argument in the alternative on these allegations. Accordingly, in this regard, Plaintiffs have stated a Title IX sexual harassment claim.

### (b) Discrimination Based on Sex

"A Title IX discrimination claim requires a plaintiff to allege (1) the educational institution received federal funding, (2) plaintiff was excluded from participation in or denied the benefits of an educational program, and (3) the educational institution in question discriminated against plaintiff based on gender." *Columbia Coll. Chi.*, 933 F.3d at 854.

As discussed, Plaintiffs have alleged enough to allow the plausible inference that Doe was sexually harassed by the other student and Defendants were deliberately indifferent to the harassment. On that note, Defendants' atypical and "surprising" decision to forego internal mandatory reporting policies—failing to report the conduct to the police and insisting instead that Doe's parents take action (Doc. 1 at ¶¶ 36, 91, 106, 196–97)—plausibly shows at this stage Doe was discriminated against based on his sex.

### (c) Retaliation

"To establish a Title IX retaliation claim [a plaintiff] must show: (1) he engaged in protected activity under Title IX, (2) [the defendant] took a materially adverse action against him, and (3) there was a but-for causal connection between the two." *Columbia Coll. Chi.*, 933 F.3d at 856. Plaintiffs reported sexual harassment and child pornography

to school administrators, the police, and the OCR. (Doc. 1 at ¶¶ 83). As a result of their protected activity, Plaintiffs contend Defendants retaliated against them by "fail[ing] to implement accommodations, misrepresent[ing] the facts, and transport[ing] [Doe] without required safety supports or parental notice." (Doc. 18 at 9 (quoted language); Doc. 1 at ¶ 84). Plaintiffs additionally point to the 2024 Van Incident as retaliatory.[5] (*Id.* at ¶¶ 63–69). Defendants, moreover, failed "to respect and adhere to the accommodations" and "did nothing to ensure [Doe's] safety" after the alleged protected speech. (*Id.* at ¶¶ 146, 161).

Defendants' only argument on this front is that any retaliation was not sex-based. But Plaintiffs need not show Defendants retaliated against them on the basis of their sex. *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173–74 ("[R]etaliation is discrimination 'on the basis of sex' because it is an intentional response to the nature of the complaint: an allegation of sex discrimination. We conclude that when a funding recipient retaliates against a person *because* he complains of sex discrimination, this constitutes intentional 'discrimination' 'on the basis of sex,' in violation of Title IX."). Plaintiffs have sufficiently alleged at this stage that they engaged in protected activity within Title IX and suffered adverse action as a result.

### (2) Fourteenth Amendment Claims (Count II)

Plaintiffs bring a substantive due process claim under the theory of state-created danger, as well as a "class of one" equal protection claim.

---

[5] The Complaint also alleges Defendants misrepresented their knowledge of the Photo but these allegations are conclusory and belied by other specific allegations.

### (a) State-Created-Danger Claim

A due process "state-created danger" claim has three elements: "(1) the government, by its affirmative acts, created or increased a danger to the plaintiff; (2) the government's failure to protect against the danger caused the plaintiff's injury; and (3) the conduct in question shocks the conscience," which requires a "culpable state of mind equivalent to deliberate indifference." *Estate of Her v. Hoeppner*, 939 F.3d 872, 876 (7th Cir. 2019) (internal quotation marks omitted). In cases involving student-on-student harassment, the state's actions must have "instigated, *created*, or *increased* the bullying that [the student] experienced at school." *D.S. v. E. Porter Cnty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (emphasis added).

Here, the Complaint alleges Defendants failed to properly monitor Doe and allowed the Photo to proliferate around SHS. A school's failure to prevent student-on-student harassment is not a state-created danger. *See Zimny v. Geneva Cmty. Unit Sch. Dist. 304*, 718 F. Supp. 3d 766, 795–96 (N.D. Ill. 2024) (collecting cases); *see also D.S. v. E. Porter Cnty. Sch. Corp.*, 799 F.3d 793, 798–99 (7th Cir. 2015) (finding school's "inaction or ineffective response to . . . bullying" was not a state-created danger).[6]

However, given the alleged history between the parties, the Court may plausibly infer that Defendants' transportation of Doe to school in a van without his specific

---

[6] Plaintiffs cite *Monfils v. Taylor* but do not precisely explain how the case supports their argument. 165 F.3d 511, 517 (discussing *Wallace v. Adkins*, 115 F.3d 427 (7th Cir. 1997), which found that ordering a prison guard to stay at an especially dangerous post qualifies as an affirmative act for purposes of a state-created danger claim). *Monfil* affirms the general rule that an affirmative act is required for state-created danger claims. *Id.* Plaintiffs also cite *J.K.J. v. Polk Cnty.* but that case did not concern a state-created-danger claim under the Fourteenth Amendment. *See generally* 960 F.3d 367 (7th Cir. 2020).

personal aide and without asking his parents (Doc. 1 at ¶¶ 63–69) was a state-created danger. The Complaint sufficiently alleges that the action, in part, caused injury (*Id.* at ¶ 90), and Defendants were "deliberately indifferent" to the danger (*E.g., id.* at ¶ 66 (Doe's father expressed concerns about safety and "school not being transparent about events surrounding Plaintiff Doe")). The conduct may plausibly shock the conscience. The allegations are sufficient to state a claim for relief on this basis.

### (b) Class-of-One Claim

"The Equal Protection Clause of the Fourteenth Amendment prohibits state action that discriminates on the basis of membership in a protected class or irrationally targets an individual for discriminatory treatment as a so-called 'class of one.'" *Reget v. City of La Crosse*, 595 F.3d 691, 695 (7th Cir. 2010) (citing *Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591 (2008); *Vill. of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000)). "A plaintiff alleging a class-of-one equal-protection claim must establish that (1) a state actor has intentionally treated him differently than others similarly situated, and (2) there is no rational basis for the difference in treatment." *Id.*

Here, the Complaint expressly alleges Doe was intentionally deprived—without any rational basis—certain services and protections afforded to similarly situated peers. (*E.g.,* Doc. 1 at ¶¶ 119, 121, 144, 156).[7] For example, Defendants declined to report Doe's

---

[7] Defendants argue the Court should disregard certain allegations because they were pled in connection to Counts III and IV and not expressly adopted for Count II. Since "the intent of the liberal notice pleading system is to ensure that claims are determined on their merits rather than through missteps in pleading," *Hatcher v. Bd. of Trs. of S. Ill. Univ.*, 829 F.3d 531, 537–38 (7th Cir. 2016) (quotation omitted), the Court will not ignore the allegations simply because they were not pled under a certain Count.

sexual harassment to the police thereby violating internal policy and deviating from their typical practice. (*Id.* at ¶¶ 36, 197). Defendants have not demonstrated a legitimate reason for the alleged differential treatment. The Seventh Circuit has upheld class-of-one claims at the pleading stage where "[n]o one has suggested, let alone demonstrated as a matter of law, a rational and proper purpose for [the alleged differential treatment]." *Geinosky v. City of Chicago*, 675 F.3d 743, 749 (7th Cir. 2012). Therefore, Plaintiffs have sufficiently stated a class-of-one claim.

### (3) Section 504 of the Rehabilitation Act and Title II of the ADA (Counts III and IV)

To state a discrimination claim under Section 504 or Title II of the ADA, a plaintiff must allege he is (1) a "qualified individual with a disability;" (2) that he was denied "the benefits of the services, programs, or activities of a public entity" or otherwise "subjected to discrimination;" and (3) the denial or discrimination was "by reason of her or his disability." 29 U.S.C. § 794 (Section 504); *Love v. Westville Corr. Ctr.*, 103 F.3d 558, 560 (7th Cir. 1996) (quoting Title II of the ADA's anti-discrimination provision, 42 U.S.C. § 12132); *King v. Hendricks Cty. Comm'rs*, 954 F.3d 981, 988 (7th Cir. 2020) ("Claims under section 504 of the Rehabilitation Act are treated as functionally identical and can be considered together with Title II claims." (internal quotation marks omitted)). Schoolchildren bringing claims under Section 504 or Title II of the ADA are subject to the same standards applicable in other disability discrimination contexts and need not make a heightened showing of "bad faith or gross misjudgment." *A. J. T. v. Osseo Area Sch., Indep. Sch. Dist. No. 279*, 605 U.S. 335, 336 (2025).

Defendants argue Doe was not discriminated against "solely by reason of his disability." *Grzan v. Charter Hosp.*, 104 F.3d 116, 119 (7th Cir. 1997) (citing 29 U.S.C. § 794) (abrogated on other grounds). Doe must show Defendants "(1) intentionally acted on the basis of the disability, (2) refused to provide a reasonable modification to permit access to the program, or (3) enforced rules that disproportionally impacted disabled people." *Doe ex rel. Smith v. Sobeck*, 941 F. Supp. 2d 1018, 1023 (S.D. Ill. 2013) (citing *Washington v. Indiana High Sch. Ath. Ass'n*, 181 F.3d 840, 847 (7th Cir. 1999)). One way Doe may establish disparate treatment is by showing Defendants acted with "deliberate indifference" because they knew "a harm to a federally protected right [was] substantially likely" and yet "fail[ed] to act upon that likelihood." *Moore v. W. Ill. Corr. Ctr.*, 89 F.4th 582, 595 (7th Cir. 2023) (internal quotation marks and citations omitted).

In this regard, Plaintiffs contend Defendants deliberately concealed and destroyed evidence of the Photo from Plaintiffs and the police. But this conclusion is unsupported. The school notified Doe's parents of the Photo in February 2024. (Doc. 1 at ¶ 39). Based on the allegations, the school did not learn about the Photo until that school year. Moreover, SHS identified students who had the Photo and made them delete it. (*Id.* at ¶ 34).

Plaintiffs also point to when Doe was left unattended in the restroom — in violation of his IEP — unprotected from the allegedly foreseeable harm waiting to occur because of his disability. (Doc. 18 at 15). Defendants knew Doe had a history of bathroom troubles and needed help in the bathroom. (Doc. 1 at ¶¶ 16–17). For example, he had a "bathroom

accident" after which he went home for the day, was seen leaving the bathroom with "red wrists," and was accused by Griffith of defecating in a urinal. (*Id.* at ¶¶ 16–19). Under his IEP, Doe was guaranteed a full-time aide who, according to Plaintiffs, was required to supervise Doe in the bathroom. The school plausibly understood Doe's IEP to encompass bathroom supervision as Doe's aide allegedly monitored him in the bathroom starting January 2023. (*Id.* at ¶ 21). Doe was ultimately left unsupervised, leading to a student taking the Photo of him in the bathroom. Thus, Plaintiffs have plausibly alleged Defendants' deliberate indifference to a substantial risk of harm to Doe. Accordingly, Counts III (Section 504) and IV (ADA) stand as to District 6. Plaintiffs concede Section 504 does not permit individual capacity liability (Doc. 18 at 18), *Stanek v. St. Charles Cmty. Unit Sch. Dist. #303*, 783 F.3d 634, 644 (7th Cir. 2015) (collecting cases), so Count III is dismissed as to Defendants Allen, Schwappach, and Griffith.

### (4) First Amendment Retaliation (Count V)

To plead a First Amendment retaliation claim, a plaintiff must allege: "(1) [they] engaged in activity protected by the First Amendment, (2) [they] suffered a deprivation that would likely deter First Amendment activity in the future, and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008) (internal quotation marks omitted).

Doe's parents allege they engaged in protected speech when they criticized District 6 at a school board meeting, filed a discrimination complaint with the OCR, and

submitted a police report. (Doc. 1 at ¶ 83). Plaintiffs contend Defendants retaliated by continuing to inadequately protect Doe from sexual harassment, failing to ensure Doe's aide was with him full-time, and by transporting Doe in a van rather than a bus without contacting his parents first.

Defendants argue they did not deter the parents' speech and, regardless, the retaliatory conduct, if any, was not motivated by their speech. On the deterrence prong, courts ask "whether the alleged conduct by the defendants would likely deter a person of ordinary firmness from continuing to engage in protected activity." *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020). The deterrent effect of retaliation "need not be great in order to be actionable." *McKinley v. Schoenbeck,* 731 F. App'x 511, 515 (7th Cir. 2018). In practice, courts have found actions such as benching an athlete, *Whalen v. MacKenzie*, 760 F. Supp. 3d 743, 753 (W.D. Wis. 2024), forcing a teenager to delete social media posts, *Cohoon v. Konrath*, 563 F. Supp. 3d 881, 889–90 (E.D. Wis. 2021), and even "failing to hold a birthday party for a public employee . . . when intended to punish her for exercising her free speech rights," *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 76 n.8 (1990), actionable forms of retaliation.

Here, an average parent of ordinary firmness likely would be deterred from speaking out against a school if the school modified their disabled child's transportation arrangement without consent. Additionally, Plaintiffs sufficiently alleged their speech motivated this retaliatory conduct. At this stage, in consideration of the facts and circumstances alleged, the temporal proximity between the protected activity and the

conduct support a plausible inference of retaliatory animus. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 829 (7th Cir. 2014).

### (5) State Law Claims[8]

Defendants argue Plaintiffs' state law claims assume, based on speculative allegations, that Defendants knew about the Photo when it was originally disseminated and deliberately failed to take action. Defendants also argue they are immune from several state law claims under the Local Governmental and Governmental Tort Immunity Act ("TIA"). 735 ILCS 5/2-619(a)(9). This argument assumes the legal sufficiency of the Complaint and brings immunity under the TIA as an affirmative defense. *See Kedzie & 103rd Currency Exch. v. Hodge*, 156 Ill. 2d 112, 115–16 (1993). The TIA provides protection by furnishing "an extensive list of immunities based on specific government functions." *Zimmerman v. Village of Skokie*, 183 Ill. 2d 30, 43 (1998) (internal quotation marks omitted). But "[u]nless an immunity provision applies, municipalities are liable in tort to the same extent as private parties." *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 368–69 (2003). The Government must show its immunity is "apparent on the face of the complaint." *Brookens v. Springfield Sch. Dist. No. 186*, 2024 IL App (4th) 240126-U, ¶ 19 (citing *Van Meter*, 207 Ill. 2d at 370, 377).

---

[8] Under each state law claim, the parties erroneously operate under Illinois procedural rules concerning the sufficiency of the claims. The *Erie* doctrine "calls on federal courts applying state law to use state substantive law and federal procedural rules." *Sumrall v. LeSEA, Inc.*, 104 F.4th 622, 629 (7th Cir. 2024) (citing *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010)). "The doctrine though typically applied in diversity cases applies equally to state law claims arising through supplemental jurisdiction." *Id.* (quotation omitted and cleaned up). Accordingly, the state law claims will be assessed under the federal pleading standards. Fed. R. Civ. P. 8(a).

**(a) Willful and Wanton Conduct and Supervision (Counts VI, VII)**

For claims of willful and wanton supervision or conduct, "[a]llegations of a failure to supervise student activities are not sufficient to state a cause of action." *Holsapple by Holsapple v. Casey Cmty. Unit Sch. Dist. C-1*, 157 Ill. App. 3d 391, 394 (4th Dist. 1987). A plaintiff must plead "an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to, or conscious disregard for, the safety of others or their property." 745 ILCS 10/1–210. "A showing of actual or constructive notice of a high probability of serious harm occurring is necessary to state a cause of action for wilful and wanton misconduct." *Templar v. Decatur Pub. Sch. Dist. No. 61*, 182 Ill. App. 3d 507, 512 (4th Dist. 1989) (citing cases); *see also Jackson v. Chicago Bd. of Educ.*, 192 Ill. App. 3d 1093, 1101 (1st Dist. 1989) ("[P]laintiff must show that the teacher or school was aware or should have known that the absence of supervision posed a high probability of serious harm or an unreasonable risk of harm.").

Based on his IEP and prior incidents, Defendants knew Doe had difficulties in the bathroom. Doe needed bathroom assistance, had a bathroom accident where he needed to be picked up from school, was accused by Griffith of defecating in a urinal, and was seen leaving the bathroom with "red wrists." (Doc. 1 at ¶¶ 16–17, 19). Even though the past incidents did not involve sexual harassment, they provide enough notice to plausibly establish that the absence of supervision in the bathroom posed an unreasonable risk of harm. Furthermore, the bathroom bullying Doe experienced is not as unrelated to prior incidents as Defendants argue.

Courts have found that in some situations, schools have an obligation to supervise or monitor students in bathrooms. *E.g.*, *Brooks v. McLean Cnty. Unit Dist. No. 5*, 2014 IL App (4th) 130503, ¶¶ 1, 28, 33 (finding a duty to monitor students in the bathroom existed when it was known that students went to the bathroom to play a "game" that involved "punching each other with closed fists as hard as they could"). At the pleading stage, these past incidents and Doe's IEP plausibly establish Defendants had a duty to supervise Doe in the bathroom and that harm resulted due to their failure to conform to that duty. Therefore, Plaintiffs' willful and wanton conduct and supervision claims stand.

However, Defendants argue they are immune from liability under Section 4-102 of the TIA because Plaintiffs contend Doe was entitled to "police protection service." Under Section 4-102, a local public entity and public employees cannot be liable for failing to provide "police protection service." 745 ILCS 10/4-102. "Police protection service" is provided when defendants "function[] as police by provid[ing] services performed by police personnel such as weapons detection, traffic control, and crowd security and control." *Doe v. Sch. Dist. U-46*, 557 F. Supp. 3d 860, 876–77 (N.D. Ill. 2021) (citing cases applying Illinois law).

Defendants have not shown that the additional supervision Plaintiffs allege Doe was entitled to is "police protection service." Protecting Doe from bullying is not a duty reserved for the police. *See Reyes v. Bd. of Educ. of City of Chi.*, 2019 IL App (1st) 180593, ¶¶ 44–46 (no Section 4-102 immunity where teacher and bus aide defendants allegedly failed to protect student from sexual assault on school bus).

Defendants rely on *Albert v. Board of Education of City of Chicago*, 2014 IL App (1st) 123544. There, a student was killed in a fight on his way home from school. The parent argued the school should have put security personnel on the student's route home to protect him. *Id.* at ¶ 1. The Illinois Appellate Court found the defendant was immune because using security personnel in this way would be police service. *Id.* at ¶ 4. But the type of physical protection at issue in *Albert* is much different from the supervision at issue here. In *Albert* the request was for off-campus, after-school *protection*. Here, Plaintiffs contend Doe should have had on-campus, school day *supervision* by staff. Plaintiffs do not contend Doe's aide or anyone else at SHS should have been Doe's bodyguard. *Albert* is inapposite.

Finally, Defendants claim immunity under Sections 2-201 and 2-109 of the TIA. Under Section 2-201, "a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." 745 ILCS 10/2-201. Section 2-109 provides that "[a] local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." *Id.* § 2-109.

For employees to have immunity under Section 2-201 they must (1) have a position involving the determination of policy or the exercise of discretion and (2) engaged in the determination of policy *and* the exercise of discretion when performing the act or omission leading to a plaintiff's injury. *Harinek v. 161 N. Clark St. Ltd. P'ship*, 181 Ill. 2d

Page 19 of 23

335, 341 (1998) (abrogated on other grounds). "Discretionary acts are those which are unique to a particular public office." *Hascall v. Williams*, 2013 IL App (4th) 121131, ¶ 25 (quoting *Snyder v. Curran Township,* 167 Ill. 2d 466, 474 (1995)).

Plaintiffs do not dispute that the individual Defendants—a superintendent, principal, and dean of students—have policymaking and discretionary authority. Plaintiffs instead contend that whether Doe's injuries arose from the exercise of that policymaking and discretionary power is a factual question for later.[9] But in *Hascall v. Williams*, the Illinois Appellate Court upheld dismissal, finding the school administrators had immunity against the plaintiff's claim that they had failed to appropriately respond to bullying. 2013 IL App (4th) 121131, ¶ 25; *see also Albers v. Breen*, 346 Ill. App. 3d 799, 808 (4th Dist. 2004) ("Certainly the way that a principal handles an instance of bullying in [her] school falls within the definition [of a discretionary act]."). In both *Hascall* and this case, the plaintiffs alleged school administrators engaged in willful and wanton conduct after a student was bullied. *See id.* at ¶¶ 30–36. Thus, Plaintiffs' claim concerning the individual defendants' failure to respond to the bullying is barred.

However, Plaintiffs' willful and wanton conduct claim is also premised on their contention that the individual Defendants failed to provide Doe with IEP-required supervision *before* the bullying occurred. Defendants argue that the "creation of plans" is

---

[9] Plaintiffs also argue that Section 2-201 immunity does not apply when willful and wanton conduct is alleged. To support this claim, Plaintiffs cite *Breuder v. Board of Trustees of Community College District No. 502*, 888 F.3d 266 (7th Cir. 2018), a case with no mention of willful and wanton conduct or the TIA, and *In re Chicago Flood*, which holds the exact opposite of what Plaintiffs cite it for. 176 Ill. 2d 179, 195 (1997) ("[S]ection 2-201 does not contain an exception for willful and wanton misconduct."). Other TIA provisions have exceptions for willful and wanton conduct, but Section 2-201 does not. *E.g.*, 745 ILCS 10/3-108, 2-202.

a discretionary act and therefore the creation of Doe's IEP was a discretionary act. (Doc. 16 at 33) (citing *Courson ex rel. Courson v. Danville Sch. Dist. No. 118*, 301 Ill. App. 3d 752, 757 (4th Dist. 1998)). Plaintiffs, however, take issue with their alleged failure to *follow* the IEP, not its terms. Specifically, they allege the IEP required Doe to have constant supervision and this supervision was not provided. (Doc. 18 at 28). So, even assuming creating Doe's IEP was a discretionary act, Defendants have not shown that the alleged failure to follow it was an act of discretion providing them immunity. Therefore, Defendants have not shown that immunity is "apparent on the face of the complaint" on this point. *Brookens*, 2024 IL App (4th) 240126-U, ¶ 19.

### (b) Intrusion on Seclusion (Count VIII)

To establish a claim for intrusion on seclusion, a plaintiff must show that "(1) the defendant committed an unauthorized intrusion or prying into the plaintiff's seclusion; (2) the intrusion would be highly offensive or objectionable to a reasonable person; (3) the matter intruded on was private; and (4) the intrusion caused the plaintiff anguish and suffering." *Busse v. Motorola, Inc.*, 351 Ill. App. 3d 67, 72 (1st Dist. 2004).

Neither party disputes that taking a nonconsensual picture of someone's genitalia violates their right to privacy. But the Photo was taken by a student, not any of the Defendants. But Plaintiffs contend Defendants' "failure to supervise or preserve evidence contributed to a severe privacy violation." (Doc. 18 at 24). Plaintiffs cite *Busse v. Motorola, Inc.*, 351 Ill. App. 3d 67 (1st Dist. 2004), to support their arguments, but their reliance is misplaced. In *Busse*, cell phone companies disclosed their customers' personal

information to a third party studying cell phone safety. 351 Ill. App. 3d at 68. But there, the companies actively disseminated personal information to a third party for use and, unlike here, the case did not involve a failure to supervise or preserve evidence. *Id.* The case hinged on an issue not at dispute here: whether the alleged violation concerned a private matter. The state court analyzed whether the disclosed personal information (names, addresses, cell phone usage, and social security numbers) was "private" for purposes of an intrusion upon seclusion claim. *Id.* at 71. Therefore, *Busse* is inapposite. Accordingly, Plaintiffs' privacy claim is dismissed.

### (c) Intentional Infliction of Emotional Distress ("IIED") (Count IX)

To prove a claim for IIED, a plaintiff must show that "(1) the defendants' conduct was extreme and outrageous; (2) the defendants knew that there was a high probability that their conduct would cause severe emotional distress; and (3) the conduct in fact caused severe emotional distress." *Swearingen-El v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 852, 864 (7th Cir. 2010) (citing *Kolegas v. Heftel Broad. Corp.*, 607 N.E. 2d 201, 211 (Ill. 1992)). For conduct to be "extreme and outrageous," it must "go beyond all possible bounds of decency and be regarded as intolerable in a civilized society." *Richards v. U.S. Steel*, 869 F.3d 557, 566 (7th Cir. 2017).

Plaintiffs argue that leaving Doe unsupervised in the bathroom, resulting in the creation of child pornography, and failing to report that child pornography, are extreme and outrageous. However, as discussed, the Complaint does not allege facts indicating Defendants contemporaneously knew about the taking and original distribution of the

Photo. School administrators took steps to find and delete copies of the Photo and contacted Doe's parents *after* a student informed SHS of the Picture's existence. (Doc. 1 at ¶¶ 32–34). Doe was left unattended in the bathroom when the Picture was taken. But despite Doe's history of bathroom accidents, the unattendance does not "go beyond all possible bounds of decency," *Richards*, 869 F.3d at 566, nor does any other alleged act in the Complaint. Therefore, Plaintiffs' IIED claim is dismissed.

## IV.    CONCLUSION

Accordingly, Defendants' Motion to Dismiss (Doc. 11) is GRANTED in part and DENIED in part. Counts VIII and IX are DISMISSED without prejudice. Count III is DISMISSED with prejudice as to the individual Defendants. Plaintiffs have 21 days following the entry of this Order to file an Amended Complaint. Plaintiffs are **warned** that any future citation to nonexistent cases, cases for legal propositions not discussed or supported, or other false representations to the Court will result in a show cause hearing and consideration of sanctions.

ENTER: March 31, 2026

_____
COLLEEN R. LAWLESS
UNITED STATES DISTRICT JUDGE